**NOT FOR PUBLICATION**                                                                                          **CLOSED**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

_____
                                                                :
JANIE BLUE,                                                :
                                                                :    Hon. Faith S. Hochberg
                            Plaintiff,                      :
                                                                :    Civil Action No. 10-2427
            v.                                              :    **OPINION & ORDER**
                                                                :
MICHAEL J. ASTRUE,                              :    Dated: April 15, 2011
COMMISSIONER OF SOCIAL SECURITY,  :
                                                                :
                            Defendant.                  :
_____:

**HOCHBERG, District Judge:**

      This matter comes before the Court upon Plaintiff Janie Blue's motion to review a final determination of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to the Social Security Act, as amended, 42 U.S.C. § 405(g). The motion has been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.

**I.     BACKGROUND**

    **A.     Plaintiff's Medical And Vocational History**

      Plaintiff is a 53-year-old female with a high school education and is able to speak and understand English. (Tr. 66, 89, 95) As the following discussion indicates, plaintiff was found disabled after her fiftieth birthday; that issue has not been appealed. In this case, she contests solely the ALJ's denial of disability benefits during the period between October 12, 2006, the

1

date of her alleged disability onset, and October 23, 2007, the date the ALJ found her disabled. Plaintiff was 49-years-old at the time of her alleged disability onset on October 12, 2006. (Tr. 83) She claims to be disabled due to hypertension and coronary artery disease. (Tr. 21, 65, 90) Plaintiff claims that she had a heart attack at work on October 12, 2006 (Tr. 23).  Plaintiff claims that she could not work following this incident, and has not worked since the incident. *Id*.

Plaintiff worked as a customer service representative for a credit bureau from 1978 until 2002. (Tr. 91) In this job, Plaintiff "taught people how to use computers and put them together." (Tr. 91) The work included: crouching for 2 hours per day; writing, typing, or handling small objects for 4 hours per day; walking, standing, and sitting for 6 hours per day; and handling, grabbing, or grasping large objects for 8 hours per day. (Tr. 91) Further, it included frequently lifting up to 25 lbs. and occasionally lifting up to 50 lbs. (Tr. 91) Plaintiff also worked as a postal service employee from July 2002 until April 2003. (Tr. 27, 91) Plaintiff testified that as a postal service employee she worked as a "casual," which included standing "all night long" and frequently "lifting boxes and throwing boxes." (Tr. 27-28) Plaintiff testified that she stopped working at the post office after her first heart attack when she was 38-years-old. (Tr. 27)

Plaintiff most recently worked as a lunch monitor at a school for three-and-a-half hours per day from September 2001 until October 2006. (Tr. 24-25, 91) Plaintiff testified she was responsible for "keeping the kids in line" and likened the job to "babysitting." (Tr. 91) In addition to working as a lunch monitor, Plaintiff worked for the Boys and Girls Club as a bus aide from 2004 until October 2006. (Tr. 91) She was responsible for transporting children from the school to the club. (Tr. 25, 91) Plaintiff testified she was on her feet the entire time while working as a lunch monitor and for the Boys and Girls Club. (Tr. 26) Plaintiff also worked as a

2

stock clerk for Kohl's Department store from April 2006 until October 2006. (Tr. 26, 91) She worked the night shift from 10 PM until 6 AM. (Tr. 26). Plaintiff stood "all night" and only sat down for her lunch. (Tr. 26) Neither the school jobs nor the stock clerk position required plaintiff to lift any objects. (Tr. 26)

Plaintiff testified to having five heart attacks, with the fifth occurring on October 12, 2006. However, a consultation report dated October 13, 2006 from St. Joseph's Wayne Hospital suggests that as of that time, Plaintiff had no history of heart attacks. (Tr. 160, 183). In addition, the record contains substantial evidence from which it could be inferred that plaintiff did not suffer a heart attack when she was hospitalized on October 12, 2006.[1] While a 2008 medical record notes that plaintiff "does look like she has evidence of an old inferior wall MI," it does not conclusively determine if, or when, plaintiff suffered a heart attack. (Tr. 250).

Because plaintiff has heart disease, she underwent heart bypass in April 2009. (Tr. 29) She testified that she no longer feels that she could perform any of her past jobs. *Id*. Plaintiff has difficulty breathing and has circulation problems. (Tr. 29) Standing and walking is "out of the question," as it results in her feeling "numb from the waist down." (Tr. 29-30) Performing any activity results in her feeling fatigued. (Tr. 30) Plaintiff keeps Nitroglycerin with her because of her past heart problems and high blood pressure, but had not used it since April 2009. (Tr. 30-31) Plaintiff also has a stent in her right kidney. (Tr. 31)

Plaintiff has no problems with personal care. (Tr. 98) She prepares her own meals on a

---

[1] *Compare* (Tr. 156-161) (records showing that during plaintiff's October 2006 hospitalization, EKG tracings and cardiac enzymes for plaintiff were unremarkable) *with* (Tr. 188) (angiogram results from October 2006 hospitalization); (Tr. 250) (2008 medical evaluation summary concluding, among other things, that plaintiff has "nonobstructive coronary disease, however, she does look like she has evidence of an old inferior wall MI").

weekly basis. (Tr. 99) She can do some household chores, like washing her dishes. (Tr. 99) However, Plaintiff goes outside for doctors' appointments only and needs assistance walking. (Tr. 99-100) She can take public transportation but she cannot drive a car due to numbness on her right side. (Tr. 100) She grocery shops but uses a motorized chair to do so. (Tr. 100). She can only walk eight steps before needing to stop and rest. (Tr. 102) Overall, she is able to take care of her personal needs, but at a slower pace due to her illnesses. (Tr. 120)

On October 12, 2006, Plaintiff went to the emergency room at St. Joseph's Wayne Hospital complaining of chest pain. (Tr. 151) She woke up that morning with severe back pain and took Motrin to relieve the pain. (Tr. 153) Later that night, around 9 PM, she felt "heavy" chest pain that radiated to her back, causing nausea and vomiting. (Tr. 153) The paramedics were called and she was given nitroglycerin. (Tr. 157) Upon arrival at the emergency room, Plaintiff was chest pain free. (Tr. 157) Additionally, she had no shortness of breath. (Tr. 157) Plaintiff underwent an electrocardiogram ("EKG") with "unremarkable" results. (Tr. 156) She was then admitted to the regular floor to rule out angina and to rule out myocardial infarction. (Tr. 156) A cardiac catheterization indicated angina and indicated she had "mild" coronary artery disease. (Tr. 186)

On April 24, 2007, state agency medical consultant Dr. Yvonne Li reviewed the Plaintiff's medical record and provided a functional assessment. (Tr. 205-12) Dr. Li found that Plaintiff could occasionally carry up to 10 lbs maximum and frequently carry less than 10 lbs. (Tr 206) Plaintiff can stand or walk for 2 hours in an 8-hour day and sit for 6 hours in an 8-hour day. (Tr 206) She has unlimited ability to push or pull objects. (Tr 206) Plaintiff can frequently balance herself, occasionally stoop, kneel, crouch, crawl, or climb ramps or stairs, and can never

climb a ladder, rope, or scaffold. (Tr. 207) Plaintiff has no manipulative, visual, or communicative limitations. (Tr. 208) Dr. Li found that the severity of Plaintiff's alleged symptoms and their effect on her functionality are proportionate and consistent with her own findings. (Tr. 210)

Additionally, another state agency reviewing physician, Dr. Raymond Briski, reviewed Plaintiff's medical record in February 2008. (Tr. 255) Dr. Briski found that Plaintiff had no significant change in her conditions since the initial claim rating with Dr. Li in April 2007. (Tr. 255) While she did undergo a procedure between the two evaluations, this would only help to improve her functional status. (Tr. 255) Dr. Briski opined that Plaintiff was capable of performing sedentary work.[2]

### B.     Procedural History

Plaintiff filed applications for disability insurance benefits and social security income on October 20, 2006. (Tr. 11, 66, 71) Plaintiff claimed disability since October 12, 2006. (Tr. 66, 71) The claims were denied initially on April 26, 2007, and upon reconsideration on March 12, 2008. (Tr. 11, 56) After the applications were denied, Plaintiff requested, and the administration granted, a hearing before Administrative Law Judge Dennis O'Leary (the "ALJ") on April 9, 2008. (Tr. 11, 58, 60) Prior to the hearing, Plaintiff amended her alleged onset of disability to May 1, 2007. (Tr. 83)  Plaintiff appeared and testified at the hearing on June 17, 2009. (Tr.11) The ALJ considered the case *de novo* and, on July 13, 2009, issued a decision finding Plaintiff

---

[2]Sedentary work involves lifting no more than 10 lbs. at a time and occasionally carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a).

not disabled for the period prior to her fiftieth birthday on October 23, 2007. (Tr. 17) The ALJ determined Plaintiff was disabled under section 1614(a)(3)(A) of the Social Security Act after that date. *Id*. The Appeals council denied Plaintiff's request for review of the ALJ decision on March 19, 2010. (Tr. 1-4) Plaintiff then filed this action.

  **C. The Disability Standard and the ALJ's Decision**

    1. <u>The Statutory Standard for a Finding of Disability</u>

An individual is considered disabled under the Social Security Act if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). An individual will be deemed disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant meets this definition of disability, the Commissioner applies the following sequential analysis:

  <u>Step One: Substantial Gainful Activity</u>.  The Commissioner first considers whether the

6

claimant is presently employed, and whether that employment is substantial gainful activity.[3] If the claimant is currently engaged in substantial gainful activity, the claimant will be found not disabled without consideration of her medical condition. 20 C.F.R. § 416.920(b).

Step Two: Severe Impairment. If the claimant is not engaged in substantial gainful activity, she must then demonstrate that she suffers from a severe impairment or combination of impairments considered severe. A "severe impairment" is one "which significantly limits [the claimant's] physical or mental capacity to perform basic work activities." If the claimant does not demonstrate a severe impairment, she will be found not disabled. 20 C.F.R. § 416.920(c).

Step Three: Listed Impairment. If the claimant demonstrates a severe impairment, the Commissioner will then determine whether the impairment meets or equals an impairment listed on the Listing of Impairments set forth in 20 C.F.R. § 404, subpt. P, app. 1 (2010). If the claimant has such an impairment, she is found disabled. If not, the Commissioner proceeds to the fourth step. 20 C.F.R. § 416.920(d).

Step Four: Residual Functional Capacity. At Step Four, the Commissioner determines whether, despite her impairment, the claimant retains the Residual Functional Capacity ("RFC")[4] to perform her past relevant work. If so, the claimant is found not disabled and the inquiry proceeds no further. If not, the Commissioner proceeds to the fifth step. 20 C.F.R. § 416.920(e)-(f).

---

[3] "Substantial" work involves significant physical and mental activities. "Gainful" work is performed for pay or profit. 20 C.F.R. § 416.972 (2010).

[4] RFC designates the claimant's ability to work on a sustained basis despite her physical or mental limitations. The RFC determination is not a decision as to whether a claimant is disabled, but is used as the basis for determining the particular types of work a claimant may be able to perform despite her impairment(s). See 20 C.F.R. § 416.945.

Step Five: Other Work.  If the claimant is unable to perform her past work, the Commissioner considers the individual's RFC, age, education, and past work experience to determine if she is able to make an adjustment to other work.  If she cannot do so, the claimant is found disabled.  20 C.F.R. § 416.920(g) (2010).

This five-step analysis involves shifting burdens of proof.  *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983).  The claimant bears the burden of persuasion through the first four steps.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  If the analysis reaches the fifth step, however, the Commissioner bears the burden of proving that the claimant is able to perform other work available in the national economy.  *Id.*

2.      The ALJ's Decision

Applying this five-step analysis, and upon review of the entire record, the ALJ first found that Plaintiff had not engaged in any substantial gainful activity at any time since October 12, 2006. (Finding 2, Tr. 13). At step two, the ALJ determined that Plaintiff suffers from the following severe impairments: hypertension, aortic sclerosis, and coronary artery disease. (Finding 3, Tr. 13). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). (Finding 4, Tr. 13). Specifically, the ALJ reviewed Plaintiff's impairments under sections 4.02, 4.04, and 4.12, but found they were not compatible with those section's requirements. (Tr. 14).

Next, the ALJ found that Plaintiff has the RFC to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a). (Finding 5, Tr. 14) While the claimant's impairments could reasonably be expected to produce her alleged symptoms, the ALJ

8

found that her statements concerning the intensity, persistence, and limiting effects of the symptoms are not credible prior to October 23, 2007. (Tr. 14) The sedentary work Plaintiff could perform entails sitting up to 6 hours in an 8 hour workday, standing and walking up to 2 hours in an 8 hour workday, and lifting and carrying up to 10 lbs. (Tr. 15) Further, at step four, the ALJ found Plaintiff is unable to perform any past relevant work. (Finding 6, Tr. 15)

At step five, the ALJ found that since October 23, 2007, the date Plaintiff turned 50, there are not a significant number of jobs in the national economy that the Plaintiff could perform. (Finding 11, Tr. 16) Before October 23, 2007, however, there were jobs in the national economy that the Plaintiff could perform, given her age, education, work experience, and RFC. (Finding 10, Tr. 16) Thus, the ALJ found that the Plaintiff became disabled only after her 50th birthday and the corresponding change in her age category. (Tr. 16-17)

## II. DISCUSSION

### A. Standard Of Review

This Court reviews the decision of the Commissioner to determine whether there is substantial evidence in the administrative record supporting his decision. 42 U.S.C.A. § 405(g); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if it might have reasonably made a different finding based on the record. *Simmonds v. Hecker*, 807 F.2d 54, 58 (3d Cir. 1986).

### B. Review Of The Commissioner's Decision

Plaintiff contends that the ALJ's partial denial of benefits is not supported by substantial evidence. First, Plaintiff argues that the ALJ erred in determining Plaintiff's RFC, and provided no justification for his determination of Plaintiff's RFC, because Plaintiffs was not capable of performing the full range of sedentary work activity following her October 2006 heart attack. Second, Plaintiff argues that the ALJ erred in his decision not to award benefits for the six months prior to Plaintiff's fiftieth birthday by applying the Grid Rulings in a mechanical fashion. The court addresses each of these arguments in turn.

1. <u>Sufficient Explanation</u>

The ALJ found that Plaintiff was not precluded from sedentary work for the period between October 2006 and October 2007. (Tr. 14) Plaintiff argues that she was not capable of performing the full range of sedentary work following her October 2006 hospitalization, and was entitled to disability benefits beginning with that date. Plaintiff further argues that the ALJ failed to adequately justify and explain his finding for Plaintiff's RFC.

In making a residual functional capacity determination, the ALJ must consider all relevant evidence before him. *Plummer*, 186 F.3d at 428; *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986). If there is substantial evidence of record to support the ALJ's factual findings, they are conclusive. *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

The record contains substantial evidence supporting the ALJ's conclusion that plaintiff was capable of performing the full range of sedentary work following her October 12, 2006 hospitalization. The ALJ gave great weight to state agency medical consultant Dr. Yvonne Li's assessment. (Tr. 15) The ALJ may consider the opinion of a non-examining physician like Dr. Li as long as other evidence in the record supports it. *Alexander v. Shalala*, 927 F. Supp. 785, 795

(D.N.J. 1995). In April 2007, Dr. Li found that Plaintiff had the exertional ability to perform sedentary work. (Tr. 206) In making her conclusion, Dr. Li relied on the Plaintiff's medical records and evidence, including her hospital visits, stent placement, and diagnoses of angina, coronary artery disease, and high hypertension. (Tr. 206-7) Thus, Dr. Li's findings were consistent with and supported by other medical evidence in the record. The ALJ properly relied on Dr. Li's assessment in determining Plaintiff's RFC.

The ALJ's RFC assessment is also supported by the functional assessment of a second state agency medical consultant, Dr. Raymond Briski.  Dr. Briski also reviewed the medical evidence and, like Dr. Li, concluded that Plaintiff had the exertional ability to perform sedentary work.  (Tr. 255).  In reaching his conclusion that plaintiff had the exertional ability to perform sedentary work, Dr. Briski specifically considered plaintiff's history of coronary artery disease, lower extremity arterial occlusive disease, and hypertension.  (Tr. 255).  Thus, the opinion of Dr. Briski also supports the ALJ's determination of Plaintiff's RFC.

Plaintiff further testified that she can handle her own personal care. (Tr. 98) She can prepare her own meals and perform household chores without assistance. (Tr. 99) She does occasionally go outside and uses public transportation. (Tr. 100) She can go shopping for groceries as long as she is seated in a motorized cart. (Tr. 100) Plaintiff's own testimony of her ability to perform personal care supports the ALJ's finding.

Further, the ALJ sufficiently explained his decision. In weighing the evidence before him, an ALJ must indicate which evidence he rejects and the reasons for rejecting it. *Plummer*, 186 F.3d at 429. The RFC determination must be "accompanied by a clear and satisfactory explanation of the basis on which it rests." *Fargnoli v. Halter*, 247 F.3d 34, 41 (3d Cir. 2001).

Here, the ALJ noted Plaintiff's subjective complaints of her physical problems, her alleged heart attacks, and her hospitalizations. (Tr. 14-15) The ALJ concluded that plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms. (Tr. 14) He specifically explained, however, that the objective record evidence, such as the lack of any clearly documented heat attacks, and the results from a number of tests conducted during and shortly after plaintiff's October 2006 hospitalization, is inconsistent with a finding that plaintiff was precluded from sedentary work prior to her fiftieth birthday. (Tr. 14-15)

While Plaintiff alleges that she suffered at least five heart attacks, (Tr. 29), the ALJ found that the record does not document any myocardial infarctions (heart attacks). The record contains substantial evidence supporting this conclusion. A consultation report dated October 13, 2006 from St. Joseph's Wayne Hospital indicates that as of that time, Plaintiff had no history of myocardial infarctions. (Tr. 160, 183) In addition, the record contains substantial evidence from which it could be inferred that plaintiff did not suffer a heart attack on October 12, 2006.[5] While a 2008 medical record notes that plaintiff "does look like she has evidence of an old inferior wall MI," it does not conclusively determine if, or when, plaintiff suffered a heart attack. (Tr. 250). In any event, medical evidence that plaintiff may have suffered one heart attack does not undermine, under the totality of the circumstances, the ALJ's determination regarding plaintiff's capacity to perform sedentary work.

In October of 2006, Plaintiff was diagnosed with angina, hypertension, mild coronary

---

[5] *Compare* (Tr. 156-161) (records showing that during plaintiff's October 2006 hospitalization, EKG tracings and cardiac enzymes for plaintiff were unremarkable) *with* (Tr. 188) (angiogram results from October 2006 hospitalization); (Tr. 250) (2008 medical evaluation summary concluding, among other things, that plaintiff has "nonobstructive coronary disease, however, she does look like she has evidence of an old inferior wall MI").

artery disease, and no obstructive coronary lesions. (Tr. 160; 185-186). While Plaintiff was hospitalized for hypertension in November 2006, she was negative for chest pain, edema, palpitations, or dizziness. (Tr. 177) She had full muscle strength, excellent respiratory results, normal heart rate and rhythm, and no pulse deficits. (Tr. 177).  Prior to the hospitalization, Plaintiff was non-compliant with her blood pressure medication. (Tr. 176) Plaintiff was released and instructed to take medication as prescribed. (Tr. 178) By July 2007, her blood pressure was considered controlled. (Tr. 225) A nuclear imaging revealed that her heart has no significant defects. (Tr. 236) Her coronary artery disease is characterized as "mild." (Tr. 186) Accordingly, regardless of whether plaintiff suffered a heart attack on October 12, 2006, substantial medical evidence supports the ALJ's RFC finding.

    The ALJ also explained that both Dr. Li's assessment and Plaintiff's own assessment of her daily activity level, supported his RFC finding. (Tr. 15) The ALJ thus sufficiently explained what evidence he rejected and his reasoning for doing so.

    In light of the substantial record evidence that the Plaintiff could perform sedentary work after October 2006, and the ALJ's clear and satisfactory explanation of his finding, the Commissioner's decision must be affirmed.

    2.    <u>Application of the Grid Rulings</u>

    Plaintiff argues that the ALJ's discretion allows him to award disability up to six months prior to Plaintiff's fiftieth birthday, and that not doing so constituted applying the Grid Rulings in mechanical fashion in violation of the Commissioner's guidelines.

    At step five, the ALJ determines whether the Plaintiff can perform any jobs in the national economy given the Plaintiff's age, RFC, education, and work experience. 20 C.F.R. §

13

416.920(g). This determination is aided by the Medical-Vocational Guidelines in 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Grids"). *Lucas v. Barnhart*, 184 Fed. Appx. 204, 206 (3d Cir. 2006).

The Grids for age provide that persons over 50 are "approaching advanced age" and a finding of disabled is appropriate if such individuals are restricted to sedentary work. 20 C.F.R. Pt. 404, Subpt. P. App. 2. Individuals under 49, however, are "younger individuals." A finding of "disabled" is warranted for these individuals if they (i) are restricted to sedentary work, (ii) are unskilled or have no transferable skills, (iii) have no past relevant work or can no longer perform past relevant work, and (iv) are unable to communicate in English, or are able to speak and understand English but are unable to read or write in English. *Id*.

Not every applicant will fit the categories of the Grids perfectly and in "border line" situations, an ALJ cannot "mechanically apply the Grids' age categories," and instead must consider all relevant facts. *Lucas*, 184 Fed. Appx. at 206; *Kane v. Heckler*, 776 F.2d 1130, 1134 (3d Cir. 1985); *see also Heckler v. Campbell*, 461 U.S. 458, 462 (validity of Grids relies on ability to make individualized determinations).

To determine if a borderline age situation exists, an adjudicator must apply a two-part test: first, determine whether the claimant's age is within a few days or few months of a higher age category; and second, determine whether using the higher age category would result in a decision of "disabled" instead of "not disabled." *See* Hearings, Appeals, Litigation, and Law Manual ("HALLEX"), II-5-3-2. If the answer to both inquires is "yes," then a border line situation exists, and the ajudicator must decide whether to use the higher age category or the claimant's chronological age. *Id*. Use of the higher age is not automatic - the ajudicator should

14

employ a "sliding scale" approach, whereby the claimant must show progressively more vocational adversities as the time period grows between the age category sought and the claimant's actual age. *Id*. Examples of vocational adversities include: limited literacy or ability to communicate in English, a history of work experience consisting of unskilled work in a single isolated industry, and any other impairments infringing on a claimant's remaining occupational base. *Id*.

      Here, the answer to the second inquiry was determined by the ALJ to be yes – using the higher age category, a finding of "disabled" was made by the ALJ.  However, the first part of the inquiry for the six months prior to age 50 is at issue here. Plaintiff claims that a six month deviation is within the "few days or few months" exception. Court decisions are notably varied regarding how much of a deviation is allowed under the exception. *See Kane v. Heckler*, 776 F.2d 1130, 1132-34 (3d Cir. 1985) (finding a borderline situation where applicant was 48 days from higher age category); *Stafford v. Astrue,* 581 F.Supp.2d. 456, 460 (W.D.N.Y. 2008) (finding that two and one half months was a borderline situation);*Lambert v. Chater*, 96 F.3d 469, 470 (10th Cir. 1996) (concluding that there was no borderline situation where claimant was 7 months from higher age category); *Lewis v. Commissioner*, 666 F.Supp. 2d. 730, 739 (11 months not a borderline situation) (E.D. Mich 2009).

      Regardless of whether Plaintiff's situation was "borderline," Plaintiff has failed to show any vocational adversities that justify using the higher age category. Plaintiff is able to fully communicate in English, has a high school education, and has a varied work background in multiple industries. (Tr. 24-28, 89, 91) Given the length of the deviation from chronological age sought by Plaintiff, and Plaintiff's failure to demonstrate any vocational adversities that would

justify using the higher age category, the ALJ's decision to utilize Plaintiff's chronological age was supported by the record.

### III.     CONCLUSION & ORDER

For the reasons set forth above, and after careful review of the record in its entirety, the Court finds that the ALJ's conclusion that Plaintiff was not disabled prior to her fiftieth birthday is based on substantial evidence. Accordingly, this Court will **AFFIRM** the Commissioner's decision.

Therefore, **IT IS** on this 15th day of April, 2011, hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED**; and it is further

**ORDERED** that this case is **CLOSED**.

/s/ **Faith S. Hochberg**
Hon. Faith S. Hochberg, U.S.D.J.